**Nos. 18-17308; 18-17311**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————

CITY AND COUNTY OF SAN FRANCISCO,

Plaintiff-Appellee,

v.

WILLIAM P. BARR, et al.

Defendants-Appellants.

———————————

STATE OF CALIFORNIA,

Plaintiff-Appellee,

v.

WILLIAM P. BARR, et al.

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Northern District of California

———————————

## REPLY BRIEF FOR APPELLANTS

———————————

JOSEPH H. HUNT
*Assistant Attorney General*
DAVID L. ANDERSON
*United States Attorney*
HASHIM M. MOOPPAN
*Deputy Assistant Attorney General*
MARK B. STERN
DANIEL TENNY
BRAD HINSHELWOOD
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

    I.     The Assistant Attorney General Has Statutory Authority to Impose Conditions on Byrne JAG Funding, Including the Notice and Access Conditions for FY 2017 ...................................................................... 2

    II.    There is No Basis for Setting Aside the Section 1373 Certification Condition for FY 2017 ..................................................................... 11

    III.   The Conditions Are Not Arbitrary and Capricious ....................................... 19

    IV.   A Nationwide Injunction That Is Wholly Unnecessary to Remedy Plaintiffs' Injuries Violates Article III and Traditional Equitable Principles ................. 21

CONCLUSION ............................................................................................ 28

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                 <u>**Page(s)**</u>

*Abbott Labs. v. Gardner,*
  387 U.S. 136 (1967) ........................................................................ 26

*Ameron, Inc. v. U.S. Army Corps of Eng'rs,*
  787 F.2d 875 (3d Cir. 1986) ........................................................... 22

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
  548 U.S. 291 (2006) .................................................................... 9, 10

*Bresgal v. Brock,*
  843 F.2d 1163 (9th Cir. 1987) ............................................. 21, 22, 24

*Brown v. Trustees of Bos. Univ.,*
  891 F.2d 337 (1st Cir. 1989) ........................................................... 22

*California v. Azar,*
  911 F.3d 558 (9th Cir. 2018) ........................................................... 22

*City & County of San Francisco v. Trump,*
  897 F.3d 1225 (9th Cir. 2018) .................................................... 22, 24

*City of Chicago v. Sessions,*
  264 F. Supp. 3d 933 (N.D. Ill. 2017) ............................................... 12
  888 F.3d 272 (7th Cir. 2018) ........................................................... 24
  No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018) ............................ 24

*City of Los Angeles v. Barr,*
  No. 18-55599 (9th Cir. July 12, 2019) ......................... 8, 9, 11, 19, 20

*City of New York v. United States,*
  179 F.3d 29 (2d Cir. 1999) ......................................................... 17-18

*City of Philadelphia v. Attorney Gen. of U.S.,*
  916 F.3d 276 (3d Cir. 2019) ................................................... 7, 13, 15

*City of Philadelphia v. Sessions,*
  280 F. Supp. 3d 579 (E.D. Pa. 2017) ............................................... 10

*College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999) ........................................................ 15

*Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*,
    857 F.3d 913 (D.C. Cir. 2017) ........................................... 3

*Escambia County v. McMillan*,
    466 U.S. 48 (1984) ........................................................ 14

*Evans v. Harnett Cty. Bd. of Educ.*,
    684 F.2d 304 (4th Cir. 1982) ........................................... 22

*Ford Motor Co. v. NLRB*,
    305 U.S. 364 (1939) ...................................................... 26

*Gill v. Whitford*,
    138 S. Ct. 1916 (2018) ................................................... 25

*Hodel v. Virginia Surface Mining & Reclamation Ass'n*,
    452 U.S. 264 (1981) ...................................................... 17

*Kansas v. United States*,
    214 F.3d 1196 (10th Cir. 2000) .......................................... 8

*Kentuckians for the Commonwealth, Inc. v. Rivenburgh*,
    317 F.3d 425 (4th Cir. 2003) ........................................... 22

*Los Angeles Haven Hospice, Inc. v. Sebelius*,
    638 F.3d 644 (9th Cir. 2011) ........................................... 22

*Lujan v. National Wildlife Fed'n*,
    497 U.S. 871 (1990) ................................................. 23, 24

*Mayweathers v. Newland*,
    314 F.3d 1062 (9th Cir. 2002) .................................. 8, 10, 19

*McCulloch v. Maryland*,
    17 U.S. (4 Wheat.) 316 (1819) ......................................... 17

*Meyer v. CUNA Mut. Ins. Soc'y,*
   648 F.3d 154 (3d Cir. 2011) ......................................................................... 22

*Murphy v. National Collegiate Athletic Ass'n,*
   138 S. Ct. 1461 (2018) ................................................................................. 16

*National Mining Ass'n v. U.S. Army Corps of Eng'rs,*
   145 F.3d 1399 (D.C. Cir. 1998) ................................................................... 27

*New York v. United States,*
   505 U.S. 144 (1992) ....................................................................................... 8

*Northwest Austin Mun. Util. Dist. No. One v. Holder,*
   557 U.S. 193 (2009) ..................................................................................... 14

*Norton v. Southern Utah Wilderness All.,*
   542 U.S. 55 (2004) ....................................................................................... 26

*Pennhurst State Sch. & Hosp. v. Halderman,*
   451 U.S. 1 (1981) .................................................................................... 10, 11

*Perez v. Campbell,*
   402 U.S. 637 (1971) ..................................................................................... 17

*Printz v. United States,*
   521 U.S. 898 (1997) ................................................................................ 18, 19

*Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.,*
   908 F.3d 476 (9th Cir. 2018), *cert. granted* (U.S. June 28, 2019) (No. 18-587) ...... 23, 27

*Richmond Tenants Org., Inc. v. Kemp,*
   956 F.2d 1300 (4th Cir. 1992) ..................................................................... 23

*Sharpe v. Cureton,*
   319 F.3d 259 (6th Cir. 2003) ....................................................................... 22

*South Dakota v. Dole,*
   483 U.S. 203 (1987) .................................................................................. 8, 15

*Steinle v. City & County of San Francisco,*
   919 F.3d 1154 (9th Cir. 2019) ..................................................................... 14

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2016), *aff'd by an equally devided court*,
   138 S. Ct. 2271 (2016) ...................................................................... 23

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017) ...................................................................... 24

*TRW Inc. v. Andrews*,
   534 U.S. 19 (2001) ............................................................................. 3

*United States v. Atlantic Research Corp.*,
   551 U.S. 128 (2007) ............................................................................. 3

*Virginia Soc'y for Human Life, Inc. v. FEC*,
   263 F.3d 379 (4th Cir. 2001) ............................................................ 23

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) .......................................................................... 25

*Whole Woman's Health v. Hellerstedt*,
   136 S. Ct. 2292 (2016) ...................................................................... 23

*Zamecnik v. Indian Prairie Sch. Dist. No. 204*,
   636 F.3d 874 (7th Cir. 2011) ............................................................ 24

*Zepeda v. U.S. INS*,
   753 F.2d 719 (9th Cir. 1983) ............................................................ 22

**Statutes:**

Administrative Procedure Act:
   5 U.S.C. § 703 ................................................................................... 26
   5 U.S.C. § 706(2) .............................................................................. 26

Violence Against Women and Department of Justice
   Reauthorization Act of 2005,
   Pub. L. No. 109-162, 119 Stat. 2960 (2006) ...................................... 3

Water Resources Reform and Development Act of 2014,
   Pub. L. No. 113-121, 128 Stat. 1193 ................................................ 12

8 U.S.C. § 1373 ............................................................. 12, 14, 15, 16

8 U.S.C. § 1373(c) ....................................................................... 16

28 U.S.C. § 1391(e) ..................................................................... 27

34 U.S.C. § 10102(a)(6) .................................................................. 3

34 U.S.C. § 10152(a)(1) .................................................................. 7

34 U.S.C. § 10152(d) ..................................................................... 4

34 U.S.C. § 10153(A)(4) .................................................................. 6

34 U.S.C. § 10153(A)(5) ................................................................ 20

34 U.S.C. § 10153(A)(5)(C) ........................................................... 6, 7

34 U.S.C. § 10153(A)(5)(D) ...................................................... 11, 12, 13

34 U.S.C. § 10156 ........................................................................ 5

34 U.S.C. § 10202(c)(1)(B) ............................................................... 4

34 U.S.C. § 10202(c)(1)(C) ............................................................... 4

34 U.S.C. § 10381 ...................................................................... 13

34 U.S.C. § 20927(a) ..................................................................... 6

34 U.S.C. § 30307(e)(2)(A) ............................................................... 6

34 U.S.C. § 40914(b)(1)(B) ............................................................... 6

34 U.S.C. § 60105(c)(2) .................................................................. 6

42 U.S.C. § 3712(a)(6) (2000) ........................................................ 2, 3

42 U.S.C. § 16154(g)(1) ................................................................. 12

**Regulation:**

28 C.F.R. § 66.12(a) (2005) ................................................................. 5

**Legislative Materials:**

H.R. Rep. No 109-233 (2005) ............................................................ 3

S. Doc. No. 75-42 (1937) ................................................................. 27

**Other Authority:**

U.S. Dep't of Justice, *Attorney General's Manual on
    the Administrative Procedure Act* (1947) .......................................... 26

## INTRODUCTION

Plaintiffs urge that the federal government cannot condition a law enforcement grant on an assurance that they will not impede the enforcement of federal immigration law. The array of statutory and constitutional provisions marshalled in their briefs provide no support for that counter-intuitive proposition.

Plaintiffs do not dispute that aliens are subject to regulation both under their own criminal laws and also under the federal immigration laws. They do not dispute that state criminal processes take precedence over federal immigration enforcement only because Congress, through the Immigration and Nationality Act (INA), has determined that this should be the case. They do not dispute that Congress made this determination based on the assumption that there would be a seamless transition of custody to the federal government, as reflected in the statutory directives to the Department of Homeland Security (DHS) to detain and remove aliens promptly after they are released. And they do not dispute that they frustrate the operation of federal law when they refuse to respond to inquiries regarding a prisoner's release date or otherwise refuse to cooperate with federal immigration officers.

Nothing in the governing statute or the Constitution requires that the federal government, in dispensing law enforcement grants, disregard a jurisdiction's failure to provide the minimal level of cooperation necessary to permit effective law enforcement by the federal government as well as state and local governments. In urging to the contrary, plaintiffs engraft atextual limitations on to the Byrne JAG statute and deprive

the actual text of meaning. And their assertions that the grant conditions offend the Tenth Amendment and the Spending Clause are without the slightest basis in doctrine or common sense.

Finally, plaintiffs do not dispute that their injury would be completely remedied by an injunction limited to their grants alone. They largely ignore longstanding Article III and equitable principles that limit injunctive remedies to what is necessary to redress the plaintiff's injury. Instead, plaintiffs identify cases that declined to discuss the issue, or that applied the principle that they now resist. Our judicial system does not and should not allow the first prevailing plaintiff to obtain nationwide relief while forcing the government to win every case in order to implement its policy anywhere.

## ARGUMENT

### I. The Assistant Attorney General Has Statutory Authority to Impose Conditions on Byrne JAG Funding, Including the Notice and Access Conditions for FY 2017.

**A.** When Congress created the Byrne JAG program in 2006, the Assistant Attorney General for Office of Justice Programs (AAG) already possessed the authority to "exercise such other powers and functions as may be vested in the [AAG] pursuant to this chapter or by delegation of the Attorney General." 42 U.S.C. § 3712(a)(6) (2000). In the same statute that created the Byrne JAG program, Congress amended this language so that it now encompasses the authority to exercise "powers and functions . . . vested in the [AAG] pursuant to this chapter [101 of Title 34] or by delegation of the Attorney General, including *placing special conditions* on all grants, and

*determining priority purposes* for formula grants." 34 U.S.C. § 10102(a)(6) (emphases added); *see* Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, §§ 1111, 1152(b), 119 Stat. 2960, 3094, 3113 (2006). The legislative history of the Byrne JAG program confirms that the language added in 2006 "allows the Assistant Attorney General to place special conditions on all grants and to determine priority purposes for formula grants." H.R. Rep. No. 109-233, at 101 (2005).

Plaintiffs urge that the new language accomplished precisely nothing. They declare that "[w]hatever follows the word 'including' is a subset of whatever comes before," Cal. Br. 31 (quoting *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury*, 857 F.3d 913, 922 (D.C. Cir. 2017)). Accordingly, they urge, any powers listed after the word "including" could not expand the powers that already existed. Their reading thus runs headlong into the rule that "no clause, sentence, or word shall be [rendered] superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001).

No one doubts that statutory language can "perform[] a significant function simply by clarifying" the meaning of statutory text, *United States v. Atlantic Research Corp.*, 551 U.S. 128, 137 (2007), but it performs that function where there is some ambiguity that requires clarification in the first place. When the relevant language was added in 2006, the AAG already possessed authority to exercise powers already granted to him by statute or delegated by the Attorney General. *See* 42 U.S.C. § 3712(a)(6) (2000). Plaintiffs surely cannot suggest that Congress needed a statutory amendment to "clarify" or "illustrate" that the AAG possessed authority that Congress had already

3

expressly conferred on him. This argument would transform a grant of authority into meaningless surplusage.

Plaintiffs' argument also cannot be reconciled with the Department's longstanding practice—never previously questioned—of imposing numerous and wide-ranging conditions on Byrne JAG awards, including conditions that go beyond those conditions authorized by other statutory and regulatory provisions. For example, the conditions restricting the purchase of certain military-style equipment, ER387-89 (¶¶ 45-50), go beyond the restrictions on "vehicles" and "luxury items" contained in 34 U.S.C. § 10152(d). Similarly, the codification of certain conditions relating to body armor in 2016, *see* 34 U.S.C. § 10202(c)(1)(B), (C), occurred *only after* the AAG imposed them as special conditions in 2012. And the AAG has imposed an "American-made" requirement for body-armor purchases, which Congress has not chosen to codify. ER387 (¶ 41).

Indeed, neither plaintiffs nor the district court has identified any such power vested in the AAG elsewhere or delegated by the Attorney General to which the language in Section 10102(a)(6) could plausibly apply. Plaintiffs make no attempt to deal with this critical difficulty in their argument, and, instead, argue that "the term 'special conditions' matched the term used in Department of Justice regulations at the time to describe conditions placed on 'high-risk' grantees—that is, those who had 'a history of unsatisfactory performance,' or inadequate 'management system[s],' had violated 'terms and conditions of previous awards,' were 'not financially stable,' or were

4

'otherwise not responsible.'" Cal. Br. 29-30 (quoting 28 C.F.R. § 66.12(a) (2005)). Plaintiffs are quite clear that no new authority was required to impose this type of special condition. Indeed, the cited regulation had been in place since 1988, and had been issued under authority that long predated the 2006 enactment. It is entirely unclear why Congress would wish to clarify in 2006 that the Assistant Attorney General had such authority, which apparently had never been disputed. Nor is there any reason to conclude that in authorizing the inclusion of "special conditions" Congress meant to refer only to one type of special condition noted in a regulation applicable to one type of grantee.

**B.** Plaintiffs are similarly wide of the mark in urging that "the conditions are inconsistent with Congress's specification of the conditions for JAG funding and how much each State must receive." Cal. Br. 21 (capitalization altered). The Department, of course, has never claimed authority to deviate from the statutory formula established by Congress for determining the size of a particular jurisdiction's award, *see* 34 U.S.C. § 10156, and thus would not, absent specific statutory authorization, have authority to partially reduce grant awards in the manner prescribed by the statutes discussed above. That a grantee's allocation is determined by the statutory formula does not excuse a grantee from the requirements of the grant, nor does it permit a grantee to demand its share free from special conditions Congress authorized the Department to impose on "all grants" in the statute that created the Byrne JAG program.

Plaintiffs mistakenly contend that the Department's interpretation of Section 10102(a)(6) would render meaningless statutory provisions in which Congress set out limited penalties of specific percentages of Byrne JAG funds that may be withheld for non-compliance with certain other requirements. SF Br. 16; Cal Br. 22-23; *see, e.g.*, 34 U.S.C. § 40914(b)(1)(B) ("Attorney General may withhold not more than 4 percent" of Byrne JAG funds for failure to provide information relevant to National Instant Criminal Background Check System); *id.* § 60105(c)(2) ("not more than a 10-percent reduction" for failure to provide information regarding death of persons in state custody); *id.* § 20927(a) (ten percent of Byrne JAG funds for jurisdictions that do not implement the Sex Offender Registration and Notification Act requirements); *id.* § 30307(e)(2)(A) (five percent of funds received for prison purposes for States that have not adopted and complied with national standards regarding prison rape). Indeed, these are instances in which Congress has in fact authorized the Attorney General to alter the amount of a grantee's allocation (and thus deviate from the statutory formula), rather than authorizing conditions on receipt of the funds. It is not superfluous for Congress to set particular penalties for non-compliance with specific provisions, and also to authorize the AAG to impose additional conditions that jurisdictions must satisfy to receive grants at all.

Plaintiffs also misunderstand the purpose of other requirements of the Byrne JAG program which permit the Attorney General to "reasonably require" "programmatic" information about the funded program, 34 U.S.C. § 10153(A)(4), and

6

to ensure that "there has been appropriate coordination with affected agencies," *id.* § 10153(A)(5)(C). Cal. Br. 23-24; SF Br. 17. Nothing in the text of those provisions limits the "programmatic" information that may be sought to "'information regarding the handling of federal funds.'" Cal. Br. 23 (quoting *City of Philadelphia v. Attorney Gen. of U.S.*, 916 F.3d 276, 285 (3d Cir. 2019)). The better reading is that the "programmatic" information references those programs listed in 34 U.S.C. § 10152(a)(1), including "[l]aw enforcement programs" and "corrections programs."

Plaintiffs fare no better in their interpretation of section 10153(A)(5)(C), which requires applicants to certify that "there has been appropriate coordination with affected agencies." Stressing the words "has been," plaintiffs urge that provision is concerned only with past cooperation, without regard to an applicant's cooperation in the future. *See* Cal. Br. 24 (the Attorney General can consider only coordination that has already occurred "in connection with the grantee's application") (quoting *City of Philadelphia*, 916 F.3d at 285). Thus, in plaintiffs' view, the Department would have no ability to enforce a grant condition even if the recipient made clear that it intended to end any coordination immediately after the grant was awarded. Plaintiffs' proposed reading would defeat the purpose of the provision, which is to establish the existence

of a policy of cooperation at the time of the proposal that will be relevant in the year in which the grant is received.[1]

**C.** Plaintiffs compound their error in urging that the conditions "violate the rule that conditions on federal grants must be "'reasonably related to the purpose of the expenditure.'" SF Br. 34 (quoting *New York v. United States*, 505 U.S. 144, 172 (1992)). As this Court has explained, however, the Spending Clause does not "impos[e] an exacting standard for relatedness," but instead is satisfied as long as the conditions "bear some relationship to the purpose of the federal spending." *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002) (quoting *New York*, 505 U.S. at 167); *see also Kansas v. United States*, 214 F.3d 1196, 1199 (10th Cir. 2000) ("minimum rationality"). The Supreme Court "ha[s] suggested (without significant elaboration) that conditions on federal grants might be illegitimate if they are *unrelated* to the federal interest in particular national projects or programs." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (emphasis added; quotation marks omitted). And in a recently issued opinion, this Court explained that notice and access conditions comparable to those imposed here met this undemanding standard when imposed on the COPS grant program, which also funds state and local law enforcement. *City of Los Angeles v. Barr*, No. 18-55599, Slip Op. at 19

---

[1] California does not attempt to defend the district court's ruling that the asserted statutory misinterpretation violates the separation of powers, and San Francisco does so only in a single sentence. SF Br. 13. As discussed in our opening brief, the district court's separation-of-powers ruling misconceives controlling principles and is without support. U.S. Br. 37-38.

(July 12, 2019) ("[C]ooperation relating to enforcement of federal immigration law . . . meets the low bar of being germane to the federal interest in providing the funding to . . . enhance public safety." (quotation marks omitted)).

Plaintiffs attack a straw man by arguing that immigration enforcement in general is not sufficiently related to local criminal justice. SF Br. 35. As an initial matter, this Court, in *City of Los Angeles*, recently concluded DOJ's determination that "illegal immigration enforcement is a public safety issue" was reasonable. No. 18-55599, Slip Op. at 23. And in any event, the purpose of the notice and access conditions is not to promote immigration enforcement generally. It is to eliminate particular impediments to immigration enforcement created by the local law enforcement departments funded by the grants. The notice and access conditions are limited to aliens whom the City and State have taken into custody based on suspected criminal conduct, and they are designed to ensure that state and local criminal law enforcement does not obstruct federal law enforcement or endanger public safety by requiring at-large arrests in the community. Declining to fund jurisdictions that hinder the removal of actual, or at least suspected, criminals is plainly related to the criminal-justice purposes of the Byrne JAG program.

Contrary to plaintiffs' contention, the notice and access conditions are not ambiguous. SF Br. 32. As an initial matter, both plaintiffs and the district court misunderstand, *see* SF Br. 32; ER40, the Supreme Court's holdings in cases like *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006), which held only

9

that "*when Congress attaches conditions* to a State's acceptance of federal funds, the conditions must be set out 'unambiguously.'" *Id.* at 296 (emphasis added). To the extent the district court believed that Congress was under an obligation to "unambiguously impose[] the Challenged Conditions" itself, ER41 (quoting *City of Philadelphia v. Sessions*, 280 F. Supp. 3d 579, 646 (E.D. Pa. 2017)), there is no such rule. Congress frequently delegates discretionary authority over distribution of federal funds in Spending Clause legislation to executive branch agencies without raising constitutional concerns. Spending Clause constraints operate in part to ensure that federal funds are distributed to recipients that are able "to exercise their choice knowingly, cognizant of the consequences of their participation." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).

As the Supreme Court has held, as long as a statute makes clear that an agency enjoys discretion to set the terms of a funding program, and the agency specifies the criteria to permit localities to make an informed decision, no notice concerns arise. As a result, this Court has correctly observed that so long as Congress has expressed an "*intention to impose a condition*," no notice concerns arise even if the statutory language is "largely indeterminate." *Mayweathers*, 314 F.3d at 1067 (emphasis in original). The Spending Clause does not obligate Congress to spell out each and every detail attached to federal funds; the relevant question for Spending Clause purposes is simply whether Congress has, through its delegation of authority to an agency, made clear that the agency has the discretion to develop conditions for distribution of the funds.

10

In addition, there is no basis to conclude the conditions here were so indeterminate as to render States unable "to exercise their choice knowingly, cognizant of the consequences of their participation." *Pennhurst*, 451 U.S. at 17. The Department did not "impose surprise or ambiguous conditions on the recipients of the funds; . . . the immigration conditions were clearly presented in the [application materials]." *City of Los Angeles*, No. 18-55599, Slip Op. at 19; *see also* ER257 (local), ER300 (State). The conditions themselves make clear what is required of participating grant recipients: the notice condition requires that grantees have a policy designed to ensure that facilities provide notice to DHS "as early as practicable" when DHS provides a formal written request for advance notice of the scheduled release date and time for a particular alien. *See, e.g.*, ER437 (¶ 56.1.B). And the access condition requires that the grantee have a policy providing that federal agents will be "given access" to correctional facilities for the purpose of meeting with aliens and to "inquire as to such individuals' right to be or remain in the United States." *Id.* (¶ 56.1.A). The Spending Clause does not require conditions on federal funding to be detailed at the level of granularity beyond that.

## II. There Is No Basis for Setting Aside the Section 1373 Certification Condition for FY 2017.

**A.** Plaintiffs err in urging that compliance with Section 1373 could not be a condition on receipt of Byrne JAG or COPS/CAMP grants. As to the Byrne JAG program, the district court erred in holding that Section 1373 is not an "applicable Federal law[]" within the meaning of 34 U.S.C. § 10153(A)(5)(D). In 2016, the

Department of Justice determined that 8 U.S.C. § 1373 is an "applicable Federal law" for purposes of the Byrne JAG grant program and asked some jurisdictions, including the State of California, to review their compliance with Section 1373. *See* ER203; *see also* ER185-86. Plaintiffs do not dispute that no jurisdiction challenged the FY 2016 condition. *See* ER335, ER355-57, ER358-59, ER396. Beginning in FY 2017, the Department extended the requirement, requiring all jurisdictions to explicitly certify that any "program or activity" funded in whole or in part by the grant complies with Section 1373. *See* ER265 (local); ER308 (state).

Plaintiffs contend that "the word 'applicable' denotes laws that apply to the JAG program in particular or to federal grant programs more generally." Cal. Br. 26. The text of the statute is not so limited, referring instead to "*all other* applicable Federal laws." 34 U.S.C. § 10153(A)(5)(D) (emphasis added); *see City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 944 (N.D. Ill. 2017). Congress is perfectly capable of writing a statute that refers specifically to laws applicable to federal grantees when it intends to do so. *See, e.g.*, 42 U.S.C. § 16154(g)(1) ("consistent with the generally applicable Federal laws and regulations governing awards of financial assistance, contracts, or other agreements"); Water Resources Reform and Development Act of 2014, Pub. L. No. 113-121, § 1043(a)(3)(C)(ii)(II), 128 Stat. 1193, 1246 ("will comply with all applicable Federal laws (including regulations) relating to the use of those funds").

Plaintiffs mistakenly urge that "[i]n the recent past, the Department told Congress that it believed it lacked the authority to condition JAG funding on

12

compliance with Section 1373." SF Br. 17. The cited letter discusses the Department's ability to condition grants on local jurisdictions continuing to detain criminal aliens and does not address whether Section 1373 is an "applicable Federal law[]" under § 10153(A)(5)(D). *See* SER97-98. The cited hearing testimony likewise does not take a position on the issue.

Plaintiffs also err in arguing that requiring compliance with Section 1373 (or other statutes) would "destabilize the formula nature of the grant." Cal. Br. 26 (quoting *City of Philadelphia*, 916 F.3d at 290). There is nothing "destabiliz[ing]" about requiring applicants to certify their compliance with federal law—provisions with which they should already be complying—particularly where that certification does not deprive them of any flexibility over how to spend their grant funds. Nor does Section 10153(A)(5)(D) require compliance with "any federal law of the Attorney General's choosing." Cal. Br. 26 (quoting *City of Philadelphia*, 916 F.3d at 290). Congress, not the Attorney General, has made laws applicable to plaintiffs.

Plaintiffs do not even attempt to explain why the Department lacks statutory authorization to condition the award of COPS grants on compliance with Section 1373. As California concedes, the COPS program at issue is a "competitive grant," and not a formula grant, so the Department has authority to select among applicants. *See* Cal. Br. 7; *see also* 34 U.S.C. § 10381 *et seq.* Denying applications when the applicant refuses to

13

agree to abide by relevant federal law falls easily within the Department's broad discretion, and plaintiffs make no serious attempt to demonstrate otherwise.[2]

**B.** The district court erred in holding that 8 U.S.C. § 1373 was unconstitutional. As an initial matter, the district court failed to apply basic principles of constitutional avoidance. The court resolved two independent issues in a manner that redresses the plaintiffs' alleged injury. First, the court concluded that plaintiffs comply with 8 U.S.C. § 1373; as California points out, subsequent to the district court's decision, this Court agreed with the district court's determination that Section 1373(a) "do[es] not prohibit" a municipality from forbidding its employees to provide "release-date information" to immigration authorities. Cal. Br. 42 (quoting *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1164 (9th Cir. 2019)) (alteration in original). Second, as discussed above, the district court erroneously held that Section 1373 is not an applicable law as a statutory matter. Having concluded on statutory grounds that Section 1373 should not affect plaintiffs' ability to receive a grant, the court had no basis for addressing the constitutionality of Section 1373 as a standalone statute, disregarding the "well-established principle . . . that normally [a] [c]ourt will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009) (quoting *Escambia County v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)). The district court's

---

[2] San Francisco, for its part, has not challenged any aspect of the COPS program.

14

constitutional ruling should be vacated on this basis alone. *See City of Philadelphia*, 916 F.3d at 291 (declining to resolve constitutional challenge to 8 U.S.C. § 1373 after resolving case on statutory grounds).

In any event, the constitutionality of Section 1373 as a standalone statute has no bearing on whether it can be constitutionally applied as a spending condition. The Supreme Court has long emphasized that "a perceived Tenth Amendment limitation on congressional regulation of state affairs d[oes] not concomitantly limit the range of conditions legitimately placed on federal grants." *Dole*, 483 U.S. at 210; *see also College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686 (1999) ("Congress may, in the exercise of its spending power, condition its grant of funds to the States upon their taking certain actions that Congress could not [otherwise] require."). This appeal concerns an injunction prohibiting the application of Section 1373 as a condition on federal funds. Neither the City nor the State dispute that the only relevance of Section 1373 to this suit is as a condition on federal funds. Thus, the only question is whether Congress authorized the inclusion of Section 1373 as a condition on receipt of Byrne JAG grants.

Moreover, even the erroneous contention that Section 1373 must be constitutional as a stand-alone matter in order to be an "applicable Federal law[]" within the meaning of Section 10153(A)(5)(D) has no bearing on its validity as a condition for the COPS/CAMP program, where its application does not depend on Section 10153(A)(5)(D). As to that program, the only questions are whether the government

15

permissibly exercised its discretion to impose the condition (as to which plaintiffs have presented no serious argument), and whether the imposition of that condition is consistent with the Spending Clause, which, as outlined below, *see infra* p. 19, it is.

Regardless, plaintiffs' Tenth Amendment attacks on Section 1373 as a standalone statute fundamentally misunderstand the Supreme Court's Tenth Amendment jurisprudence. Section 1373 does not, as plaintiffs contend, regulate states and localities in violation of *Murphy v. National Collegiate Athletic Association*, 138 S. Ct. 1461 (2018). The statute provides for a free flow of information between federal, state, and local governments with regard to persons regulated at each level. Section 1373 requires the federal government to respond "to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law." 8 U.S.C. § 1373(c). And, as relevant here, it does no more than preempt state and local governments from exercising their regulatory authority to frustrate the federal government's regulation of persons in state and local custody. Indeed, plaintiffs do not dispute that their policies impede the enforcement of federal immigration law against private parties by prohibiting the sharing of information that is important to determining when DHS may detain and remove aliens.

Plaintiffs erroneously contend that Section 1373 is not a preemption provision because it regulates only "'Federal, state, [and] local government entit[ies]' and 'official[s],'" Cal. Br. 49 (alterations in original) (quoting 8 U.S.C. § 1373), and not

16

private citizens. But express preemption provisions are always directed at governmental entities and not private persons. Plaintiffs do not contest that Congress could have required federal immigration authorities to take into custody and remove aliens without permitting States and localities to enforce local criminal law against them in the first instance. *See* U.S. Br. 32-33. Congress, however, chose to preserve a role for state and local criminal justice systems, and enacted Section 1373 in recognition of these overlapping schemes for regulating the same aliens, ensuring that the federal government would respond to state inquiries and that the State would not use its authority to hinder federal immigration enforcement. Placing conditions on the exercise of regulatory authority by a State or local government in no respect commandeers that subordinate sovereign. *See Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 290-91 (1981) ("We fail to see why the Surface Mining Act should become constitutionally suspect simply because Congress chose to allow the States a regulatory role.").

Plaintiffs cannot abstract Section 1373 from its important role in the context of the INA. And *Murphy* did not create a novel limitation that bars preemption of direct state interference with federal law. The "controlling principle" is that "*any* state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause." *Perez v. Campbell*, 402 U.S. 637, 652 (1971) (emphasis added); *see also McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 326-27 (1819); *City of New York v.*

*United States*, 179 F.3d 29, 35 (2d Cir. 1999) (observing that "the Supremacy Clause . . . bars states from taking actions that frustrate federal laws and regulatory schemes").

Plaintiffs miss the mark when they urge that "declining to participate is not the same as obstruction." Cal. Br. 49. The statute is not asking the state to "participate" in a federal program. Plaintiffs have chosen to take advantage of the opportunity afforded by Congress to exercise their regulatory authority by enforcing state and local laws before the federal government enforces the immigration laws. Having done so, they cannot frustrate the federal government's regulation of the same individuals by refusing to respond to questions about their release dates. Their analogy to *Printz v. United States*, 521 U.S. 898 (1997), highlights their error. The statute in *Printz* required state and local officials to carry out background checks at the federal government's behest. Section 1373 does not compel state or local officials to participate in immigration enforcement. It merely preempts state and local governments from using local criminal justice authorities to obstruct the federal government's enforcement of the immigration laws.

At a minimum, Section 1373 is valid as an information-sharing requirement that falls outside the scope of the anti-commandeering doctrine. A requirement to respond to, or not interfere with, a federal inquiry about an alien's release date is not "commandeering" local officials to execute federal law. Indeed, the majority in *Printz* explicitly distinguished statutes that "require only the provision of information to the Federal Government," reasoning that they "do not involve . . . the forced participation

18

of the States' executive in the actual administration of a federal program." 521 U.S. at 918. The same is true of Section 1373.

Finally, for reasons similar to those outlined above, *see supra* pp. 8-11, the City is wrong to assert that the certification condition violates the Spending Clause. Declining to fund jurisdictions that fail to comply with federal law in a manner that hinders the removal of actual, or at least suspected, criminal aliens is plainly related to the criminal-justice purposes of the Byrne JAG program. *See City of Los Angeles*, No. 18-55599, Slip Op. at 23. Since the Inspector General report in 2016, the Department has "ma[d]e the existence of the [Section 1373] condition . . . explicitly obvious," *Mayweathers*, 314 F.3d at 1067, and has been clear that the certification covers providing release-date information. That is sufficient to satisfy the requirements of the Spending Clause.

## III. The Conditions Are Not Arbitrary and Capricious.

There is no basis for a challenge under the Administrative Procedure Act (APA) to the requirement that jurisdictions certify their compliance with Section 1373. As explained in our opening brief, (at 41), the question is simply whether Congress has made Section 1373 an "applicable Federal law[]" with which plaintiffs must certify compliance.[3] In answering that legal question, California's suggestion that the Section 1373 certification was an unexplained departure from past practice is irrelevant. Plaintiffs ignore the fact that the Department first determined that Section 1373 was an

---

[3] Only California has continued to press on appeal an argument that the imposition of the conditions was arbitrary and capricious. *See* Cal. Br. 37.

"applicable Federal law[]" in 2016, and included a requirement that the State review its compliance with Section 1373 in the State's FY 2016 Byrne JAG award without objection from the State. *See* ER335, ER355-57, ER358-59, ER396. The only novelty in the FY 2017 grant is that the Department called particular attention to grantees' compliance (or noncompliance) with the statute through the certification—an action doubtless within the Department's authority to require a certification "made in a form acceptable to the Attorney General." 34 U.S.C. § 10153(A)(5).

The State also contends that the notice and access conditions are arbitrary and capricious, chiefly arguing that the Department did not make an adequate factual determination about the conditions' effect on crime. Cal. Br. 38-39. But it is sufficient under the APA's requirements for reasoned decisionmaking that the Department acted to discourage a particular practice that has a deleterious effect on the federal government's efforts to enforce the laws and poses risks to officer safety and the community—an effect that plaintiffs do not dispute. As this Court recently recognized, "DOJ reasonably concluded that working with the federal government to enforce the federal immigration laws against aliens who have committed crimes or are suspected of having committed crimes makes communities safer." *City of Los Angeles*, No. 18-55599, Slip Op. at 31 (quotation marks and brackets omitted). In particular, the plaintiffs' actions impair federal immigration enforcement and force the federal government to attempt to take custody of aliens in the community—at risk to the officers involved and

20

to public safety—rather than taking custody through an orderly process that does not subject the community to intrusion and potential harm.

Nor was imposition of these conditions subject to any heightened burden of explanation. *See* Cal. Br. 39. The letter plaintiffs cite does not discuss whether Section 10102(a)(6) provides authority to impose the conditions at issue here, but merely addresses at a general level the Department's ability to condition grants on local jurisdictions continuing to detain criminal aliens. *See* CSER40-41. In any event, whether the Department has the statutory authority to impose "special conditions on all grants" is a straightforward question of statutory construction, not a matter of factual or evidentiary support.

## IV. A Nationwide Injunction That Is Wholly Unnecessary to Remedy Plaintiffs' Injuries Violates Article III and Traditional Equitable Principles.

**A.** This Court has repeatedly recognized that injunctive relief should be no broader than necessary to afford the plaintiff complete relief, as demonstrated by the very cases upon which plaintiffs rely. San Francisco quotes this Court's decision in *Bresgal v. Brock*, 843 F.2d 1163 (9th Cir. 1987), where this Court made (and italicized, for good measure) exactly this point: "an injunction is not necessarily made over-broad by extending benefit or protection to persons other than prevailing parties in the lawsuit— even if it is not a class action—*if such breadth is necessary to give prevailing parties the relief to which they are entitled.*" *Id.* at 1170-71 (emphasis in original); SF Br. 39. Applying that principle, the Court upheld an injunction only because the government "ha[d] not

suggested how the injunction . . . can be limited to any particular group" and still afford relief to the plaintiffs. *Bresgal*, 843 F.2d at 1171; *see also Evans v. Harnett Cty. Bd. of Educ.*, 684 F.2d 304, 306 (4th Cir. 1982) (holding that injunction is not necessarily precluded merely because it benefits parties not before the court).

By contrast, in cases where a narrower injunction would provide complete relief to the plaintiffs, this Court has repeatedly vacated broader injunctions. *See California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018); *City & County of San Francisco v. Trump*, 897 F.3d 1225, 1244-45 (9th Cir. 2018); *Los Angeles Haven Hospice, Inc. v. Sebelius*, 638 F.3d 644, 665 (9th Cir. 2011); *Zepeda v. U.S. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983). Other circuits to address the issue have reached the same conclusion.[4]

This principle precludes a nationwide injunction in this case: plaintiffs do not and could not contend that they need an injunction relating to grants in Mississippi and Maine in order to obtain complete relief. The district court's "searching inquiry" in this case, Cal. Br. 53, did not assess whether a nationwide injunction was necessary to award complete relief to plaintiffs, but instead concluded that nationwide relief would help other entities not before the court. That is not the inquiry contemplated by this Court's precedent. Plaintiffs do not advance their argument by relying on cases in which, unlike here, broad injunctions were held to be necessary to provide complete relief to the

---

[4] *Meyer v. CUNA Mut. Ins. Soc'y*, 648 F.3d 154, 171 (3d Cir. 2011); *Sharpe v. Cureton*, 319 F.3d 259, 273 (6th Cir. 2003); *Kentuckians for the Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425, 436 (4th Cir. 2003); *Brown v. Trustees of Bos. Univ.*, 891 F.2d 337, 361 (1st Cir. 1989); *Ameron, Inc. v. U.S. Army Corps of Eng'rs*, 787 F.2d 875, 888-90 (3d Cir. 1986).

22

plaintiffs. *See Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 512 (9th Cir. 2018), *cert. granted* (U.S. June 28, 2019) (No. 18-587) ("[T]he government fails to explain how the district court could have crafted a narrower injunction that would provide complete relief to the plaintiffs."); *Texas v. United States*, 809 F.3d 134, 188 (5th Cir. 2016), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) (per curiam) (finding a "substantial likelihood that a geographically-limited injunction would be ineffective"); *Virginia Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 393 (4th Cir. 2001) (noting that in *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300 (4th Cir. 1992), a nationwide injunction addressing eviction procedures "was appropriate because the plaintiffs were tenants from across the country," and "[n]ationwide injunctions are appropriate if necessary to afford relief to the prevailing party").

Even less probative are cases affirming injunctions without addressing Article III or equitable limits on the scope of relief. For example, in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292 (2016), although the Supreme Court discussed whether the challenge to the state abortion restrictions there was "facial" or "as-applied," *id.* at 2307, the question whether Article III or equity imposed limits on the applicability of any injunction to non-plaintiffs was neither pressed nor passed upon—likely reflecting the practical reality that a Supreme Court decision controls as a matter of precedent regardless of the judgment's scope. In *Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990), the Supreme Court simply noted, in the course of addressing whether a particular agency program was final agency action and ripe for review, that a challenge

23

to a broad policy may "affect[]" the program as a whole.  *Id.* at 890 n.2.  And in *Zamecnik v. Indian Prairie School District No. 204*, 636 F.3d 874, 879 (7th Cir. 2011), in assessing mootness, the Seventh Circuit discussed the propriety of a broad injunction only in connection with the Federal Rules of Civil Procedure.

In *San Francisco*, on which California relies, this Court remanded only because the record did not clearly establish whether broader relief was "necessary to give prevailing parties the relief to which they are entitled."  897 F.3d at 1244 (quoting *Bresgal*, 843 F.2d at 1170-71).  The Court cited a portion of the Seventh Circuit's now-vacated decision in *City of Chicago v. Sessions*, 888 F.3d 272, 292-93 (7th Cir. 2018), noting that the Seventh Circuit "affirm[ed] a nationwide injunction in part because the statute 'interconnects' all recipients of Byrne JAG grants."  *San Francisco*, 897 F.3d at 1244; *see City of Chicago v. Sessions*, No. 17-2991, 2018 WL 4268817 (7th Cir. June 4, 2018) (vacating relevant portion of opinion).  But plaintiffs properly do not rely on that theory here, which is wrong for the reasons stated by Judge Manion: at most, "[i]f money were withheld and redistributed from other jurisdictions, [plaintiffs] would *benefit* by getting more money." *Chicago*, 888 F.3d at 299 (Manion, J., concurring in judgment in part, dissenting in part).

**B.**  This Court's longstanding rule properly applies Article III and equitable principles.  As to Article III, plaintiffs misunderstand the Supreme Court's repeated admonition that "standing is not dispensed in gross."  *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017).  The illusory distinction plaintiffs posit between the "type" of relief and the scope of relief cannot be squared with the Supreme Court's

24

express statement in *Gill v. Whitford* that a "plaintiff's remedy must be tailored to redress the plaintiff's particular injury." 138 S. Ct. 1916, 1934 (2018).

As to equitable principles, San Francisco unapologetically asserts that it should be entitled to secure relief "to protect many cities and counties—especially smaller localities." SF Br. 41. Its position thus reduces to the one-sided, and fundamentally inequitable, notion that absent parties should obtain relief if plaintiffs win but should not be bound if plaintiffs lose.

Plaintiffs' observation that other courts have had an opportunity to consider the merits of the grant conditions here, SF Br. 45; Cal. Br. 54-55, ignores that the government would need to win *all* of the cases in order to carry out its preferred policy, whereas challengers only have to obtain *one* nationwide injunction to wipe out the policy or force the government to seek Supreme Court review. Plaintiffs seek to bind the federal government in an even more sweeping and complete manner than the application of collateral estoppel, barring the federal government from applying the grant conditions to all applicants, even if no other grantee objects to the conditions.

**C.** There is no basis for California's brief suggestion that the APA upended the bedrock principle that injunctive relief should be tailored to the plaintiff's injury. *See* Cal. Br. 52-53. A court "do[es] not lightly assume that Congress has intended to depart from established principles" regarding equitable discretion, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and the APA in no respect suggests that Congress contemplated such a departure. To the contrary, the APA makes clear that, absent a

special review statute, the APA relies on the traditional "form[s] of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction." 5 U.S.C. § 703. Whether to grant an injunction to a plaintiff challenging administrative action remains discretionary, *see Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), as the reference to "declaratory judgments" illustrates, *see* 5 U.S.C. § 703. Moreover, the language in the scope-of-review provision—that the court shall "set aside agency action"—is silent as to whether the court shall set aside such action as to the parties or as to everyone. *Id.* § 706(2).

The Attorney General's Manual on the Administrative Procedure Act—which the Supreme Court has treated as especially persuasive authority, *see Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004)—observed that Section 706 of the APA merely "restates the present law as to the scope of judicial review" of agency action. U.S. Dep't of Justice, *Attorney General's Manual on the Administrative Procedure Act* 107-08 (1947). And the law at the time of the APA's enactment, consistent with traditional Article III and equitable principles, was that nationwide injunctions were simply unknown. *See, e.g.*, *Ford Motor Co. v. NLRB*, 305 U.S. 364, 373 (1939) (in reviewing agency action shortly before the APA was enacted, the usual "equitable principles governing judicial action" applied). Indeed, a report prepared for Congress by the Attorney General in 1937 recorded 1,600 separate injunctions issued against a single piece of New Deal tax legislation in just over six months, while also noting that

26

collection of the tax continued from those who had not filed suits.  S. Doc. No. 75-42, at 1, 3 (1937).

The D.C. Circuit's analysis of the APA reflects the unique circumstance that the D.C. Circuit's rulings often curtail the agency's flexibility nationwide as a practical matter because venue rules permit aggrieved parties to seek review in the District of Columbia, where the federal defendant is located.  *See National Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409-10 (D.C. Cir. 1998); 28 U.S.C. § 1391(e).  And even on its own terms, the D.C. Circuit's precedent is limited to agency regulations, which are not at issue here.  *See National Mining Ass'n*, 145 F.3d at 1409-10; *see also Regents of the Univ. of Cal.*, 908 F.3d at 511 (discussing D.C. Circuit precedent).

In short, there is no basis in this case for enjoining conditions applicable to grants awarded to entities not before the Court.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed.

Respectfully submitted,

JOSEPH H. HUNT
*Assistant Attorney General*

DAVID L. ANDERSON
*United States Attorney*

HASHIM M. MOOPPAN
*Deputy Assistant Attorney General*

MARK B. STERN
DANIEL TENNY
KATHERINE TWOMEY ALLEN
BRAD HINSHELWOOD
*/s/ Laura E. Myron*

LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*

July 2019

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, appellants state that *City of Los Angeles v. Barr*, No. 18-56292 (oral argument held April 10, 2019), *City of Los Angeles v. Barr*, No. 19-55314, *City & County of San Francisco v. Barr*, No. 19-15950 and *State of California v. Barr*, No. 19-15947 (opening brief due August 12 2019) are related cases pending before this Court.

*s/ Laura E. Myron*
LAURA E. MYRON

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7,000 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Laura E. Myron*
LAURA E. MYRON

**CERTIFICATE OF SERVICE**

I hereby certify that on July 12, 2019, I electronically filed the foregoing

brief with the Clerk of the Court for the United States Court of Appeals for the

Ninth Circuit by using the appellate CM/ECF system.  Participants in the case

are registered CM/ECF users, and service will be accomplished by the appellate

CM/ECF system.


_s/Laura E. Myron_
LAURA E. MYRON